IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY GARDNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-131-WKW |
| ) | [WO] |
| MGC MORTGAGE, INC., ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION AND ORDER**

Several years ago the roof on Plaintiff Mary Gardner's house was damaged in a hail storm. Although her insurance company wrote a check to pay for repairs, Ms. Gardner did not see a penny of that money for over two years. She blames Defendant MGC Mortgage, Inc., for the delay because it held on to her insurance funds for most of that time. The amended complaint alleges MGC is liable on seven state-law theories, but MGC denies any of them present triable claims. The matter comes before the court on MGC's motion for summary judgment (Doc. # 34), which is fully briefed (Docs. # 35, 40, 45). For reasons that follow, summary judgment is due on all Ms. Gardner's claims but two. Only her contract and conversion claims survive.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Id.* at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).


## III.  FACTUAL AND PROCEDURAL BACKGROUND

One spring day in 2009, the roof on Plaintiff Mary Gardner's house was damaged in a hail storm.  Ms. Gardner's insurance covered the damage with a check for $4,350.99, made out jointly to her and GMAC Mortgage, Inc., which was servicing her mortgage at the time.

Citing a clause in Ms. Gardner's mortgage, GMAC wrote her a letter asking for the endorsed insurance check, along with a few other documents.  (The parties are calling the documents GMAC requested a "claim package," and the court will follow their lead.)  The letter warned that failure to submit a claim package meant GMAC would not release Ms. Gardner's insurance funds.

It is undisputed that Ms. Gardner sent in the endorsed check by July 1, 2009, when Defendant MGC took over as Ms. Gardner's new mortgage servicer.  Within two weeks GMAC forwarded Ms. Gardner's insurance funds to MGC, but MGC thought the funds were monthly payments and credited Ms. Gardner's account accordingly.  It was not until October 9, 2009, that MGC noticed its error and transferred Ms. Gardner's funds into a restricted loss draft account.

Meanwhile, Ms. Gardner was making phone calls to anyone who would listen, trying to get her money.  GMAC told her MGC had the money.  MGC told her it did not.  Both instructed Ms. Gardner to fill out and return a claim package.  Ms. Gardner

turned to her insurance agent and the local HUD office for help. Finally, on October 22, 2009, Ms. Gardner learned that MGC had her insurance money.

But MGC still did not release Ms. Gardner's funds. On March 11, 2011, Ms. Gardner sued GMAC in the Circuit Court of Montgomery County. MGC was added as a Defendant on August 30, 2011. At some point during the pendency of this action, MGC released Ms. Gardner's funds, but she still seeks to recover for conversion, fraud, breach of contract, fraudulent suppression, breach of fiduciary duty, negligence, and wantonness.

MGC, the only defendant left, now moves for summary judgment.

## IV. DISCUSSION

Of the seven claims Ms. Gardner brings against MGC, summary judgment is due on five of them; MGC's motion is due to be granted on Ms. Gardner's claims of fraud (Count II), fraudulent suppression (Count VI), breach of fiduciary duty (Count VIII), negligence (Count X), and wantonness (Count XI).[1] Even assuming Ms. Gardner's version of the facts is true, each of those counts suffers a legal deficiency that entitles MGC to judgment as a matter of law.

---

[1] Counts III, V, VII, and IX named GMAC only. GMAC is no longer a party to this action.

Ms. Gardner's claims of conversion (Count I) and breach of contract (Count IV), on the other hand, present genuine questions of material fact, which the court cannot resolve on summary judgment. Accordingly, Ms. Gardner may proceed to trial on those two claims.

**A.     Summary judgment is due on five of Ms. Gardner's claims.**

*1.     Fraud*

Ms. Gardner argues MGC is liable for fraud on two theories: (1) MGC broke a promise to release her insurance funds within five days after receiving her claim package; and (2) MGC told Ms. Gardner it did not have her funds when it actually did. Neither gives rise to liability for fraud.

The first allegedly fraudulent statement Ms. Gardner identifies comes from a purported contract she had with GMAC (which she claims MGC "inherited") that stated "the funds would be released within 4–5 business days once [Ms. Gardner] returned the forms." (Doc. # 40, at 34–35.) Even assuming MGC can be liable for GMAC's statement on Ms. Gardner's inheritance theory, she presents no authority suggesting Alabama law recognizes a cause of action for fraud based on the breach of contractual promises. But MGC cites authority to the contrary: "[I]t is clear that to assert a fraud claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations

5

independent from the promises in the contract and must independently satisfy the elements of fraud." *Dickinson v. Land Developers Constr. Co., Inc.*, 882 So. 2d 291, 304 (Ala. 2003) (Houston, J., concurring); *see also id.* at 303–07 (reviewing Alabama cases and concluding breach of a contractual promise does not give rise to fraud liability). If MGC broke a contractual promise it made to Ms. Gardner, her remedy is an action for breach of that contract, not an action for fraud.

That narrows Ms. Gardner's claim of fraud to a single alleged misrepresentation. Ms. Gardner's evidence indicates MGC denied possession of her insurance funds when, in reality, it had received them and placed them in the wrong account. MGC maintains that was nothing more than an "honest mistake" (Doc. # 45, at 30), but the basic fact is essentially undisputed: MGC's statement was untrue.

But MGC is not liable for fraud merely because it made an untrue statement. Instead, fraud liability arises only if that untrue statement was intended to induce Ms. Gardner to act. Under Alabama law, a defendant is not liable for fraud unless "the fraud (whether perpetrated by a misrepresentation or by the suppression of material information) [is] directed toward the plaintiff in the sense that the plaintiff was intended to act upon it." *Pegram v. Hebding*, 667 So. 2d 696, 703 (Ala. 1995). To that end, the pattern jury instructions would require Ms. Gardner to prove "[t]hat [MGC] intended that [she] rely on the statement" whether the false statement was

made intentionally, recklessly, or mistakenly.  Alabama Pattern Jury Instructions: Civil 18.01, 18.02, 18.03.  Thus, although Ms. Gardner need not necessarily provide evidence MGC knowingly made a false statement when it denied possession of her funds, she must give some evidence that MGC intended that statement to induce her to take action.

Ms. Gardner, however, has presented no evidence to that effect.  Although her evidence suggests MGC made a false statement when it denied possession of her insurance money, she has never explained what MGC stood to gain from doing so.[2]  More importantly, although Ms. Gardner identifies several actions she took in purported reliance on MGC's false statement – she made a few phone calls and met with third parties (Doc. # 40, at 36) – she presents no evidence that MGC intended for her to take those actions.[3]  Without such evidence, Ms. Gardner has not met her burden of establishing a genuine question of material fact on her fraud claim.

---

[2] Incidentally, this is also a pleading defect because Ms. Gardner has never identified what MGC "gained by the alleged fraud," which she was required to do when she pleaded a claim of fraud.  *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (defining heightened pleading standard for fraud).

[3] To the extent Ms. Gardner might have argued MGC intended to induce her to inaction rather than action, the undisputed evidence shows MGC was unsuccessful: Ms. Gardner continued to diligently search for her funds until she was ultimately successful when she asked a HUD agent to make a call on her behalf.  (Doc. # 40, at 11.)  Thus, Ms. Gardner cannot (and does not) argue she reasonably relied on MGC's denial to refrain from taking action.  *See AstraZeneca LP v. State*,  41 So. 3d 15, 27 (Ala. 2009) ("[A] party alleging any form of fraud must present evidence of 'reasonable reliance' on the purported fraud." (quotations omitted)).

### *2.     Fraudulent Suppression*

Similarly, Ms. Gardner cannot prevail on her claim of fraudulent suppression. Even assuming Ms. Gardner's evidence shows MGC concealed a material fact when it denied possession of her insurance funds, that is not enough. As mentioned above, fraudulent suppression is only actionable when it is "directed toward the plaintiff in the sense that the plaintiff was intended to act upon it." *Pegram*, 667 So. 2d at 703. Ms. Gardner's evidence does not create a genuine issue of material fact with regard to that point, so summary judgment is due on her claim of fraudulent suppression.

### *3.     Breach of Fiduciary Duty*

Ms. Gardner also contends MGC owed her a fiduciary duty, which it breached by failing to promptly release her insurance money. Although she recognizes creditors do not usually owe fiduciary duties to debtors, she insists her case falls within an exception. It does not.

Ms. Gardner's sole argument to the contrary relies on the Alabama Supreme Court's decision in *Green Tree Acceptance, Inc. v. Tunstall*, 645 So. 2d 1384 (Ala. 1994). There, a creditor made a loan to finance the plaintiff's new home. That loan included an extra $1,200, which the creditor was going to spend installing an air conditioner in the plaintiff's home. After it took the creditor a year to install the air conditioner, the plaintiff sued on theories of conversion, breach of trust, and breach

of fiduciary duty. On appeal from a jury verdict in the plaintiff's favor, the Alabama Supreme Court reversed because he had not proved conversion. *Id.* at 1388. But in dictum, the court noted the plaintiff had presented enough evidence to prove the creditor established a trust in his favor when it held the $1,200 for the air conditioner. *Id.* at 1387. Breach of that trust could give rise to a claim for breach of fiduciary duty.

But the rationale of the *Green Tree Acceptance* decision does not apply here. In that case, the plaintiff presented evidence sufficient to establish a "declaratory trust," which is "a trust in which a settlor declares himself trustee of property for the benefit of another, the beneficiary." *Id.* (quotations omitted). There is no evidence in this case that MGC held any money for Ms. Gardner's benefit. Instead, MGC claims its motive for holding onto her funds was purely selfish, *viz.*, to protect its collateral until it was sure Ms. Gardner would use the money to repair her roof. In fact, the provision of the mortgage that initially allowed MGC to hold Ms. Gardner's funds expressly states that MGC can hold onto insurance proceeds that come from damage to her home "until [MGC] has had an opportunity to inspect [her house] and ensure the work has been completed to [MGC's] satisfaction." (Doc. # 35, at 14 n.1.)

This is not a case like *Green Tree Acceptance* where a lender offered to take some action to benefit the homeowner. Nor is there evidence that Ms. Gardner put any special trust or faith in MGC; she simply expected MGC to perform its

9

contractual duty and return her money once she filled out the proper forms. MGC held Ms. Gardner's funds to protect its collateral, not to benefit her. Nothing in those circumstances suggests a trust arose, or that MGC assumed the role of a fiduciary. Accordingly, summary judgment is due on Ms. Gardner's claim for breach of fiduciary duty.

### *4.     Negligence and Wantonness*

Breach of some legal duty is a fundamental element of claims for both negligence and wantonness. *See E.H. v. Overlook Mountain Lodge*, 638 So. 2d 781, 783 (Ala. 1994) (recognizing duty as an "essential element[ ] of a negligence or wantonness action"). Ms. Gardner identifies two duties she claims MGC breached. Neither gives rise to liability for negligence or wantonness.

First, Ms. Gardner's complaint alleges "MGC had a duty to [disburse] the Plaintiff's insurance claim funds." (Doc. # 1-9 ¶ 72.) That duty, however, arose solely from the contractual language of Ms. Gardner's mortgage, and "mere failure to perform a contractual obligation is not a tort." *Barber v. Business Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled on other grounds by White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009); *see also Blake v. Bank of Am., N.A.*, No. 3:11cv242, 2012 WL 607976, at *3 (M.D. Ala. Feb. 27, 2012) ("Alabama

[law] does not recognize a tort-like cause of action for the breach of a duty created by contract.").

Second, Ms. Gardner suggests MGC failed at times to comply with its own internal policies, which were somehow converted into legal duties by the so-called "'undertake a duty' doctrine." (*See* Doc. # 40, at 29 (citing *Spriggs v. Compass Bank*, 742 So. 2d 178, 181 (Ala. Civ. App. 1997)).)  Specifically, Ms. Gardner claims MGC failed to comply with its own internal policies regarding follow-ups on customer calls and the inspection of damaged property.  But Ms. Gardner cites nothing in Alabama law to suggest those internal policies imposed legal duties on MGC.

True, Alabama does "recognize[ ] the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith." *Dailey v. City of Birmingham*, 378 So. 2d 728, 729 (Ala. 1979).  But even when that doctrine applies, it does not impose any duty beyond the familiar "duty of acting with due care." *Id.* Even then, that duty of care only applies to "one who volunteers to act on behalf of another*." Palomar Ins. Corp. v. Guthrie*, 583 So. 2d 1304, 1306 (Ala. 1991).  Thus, although Alabama courts frequently talk of the duty that can arise when one volunteers to act, the undertake-a-duty doctrine does not so much create new legal duties as it emphasizes a familiar one:  Even those who gratuitously volunteer to take

11

an action for the benefit of another must exercise due care when doing so. The cases applying that rule illustrate the point. *See, e.g., Rudolph v. First S. Fed. Sav. & Loan Ass'n*, 414 So. 2d 64, 71 (Ala. 1982) (lender that undertook a duty to inspect the borrower's property for the borrower's benefit was obligated to exercise due care in performing the inspection); *First Fed. Sav. & Loan Ass'n of Hamilton v. Caudle*, 425 So. 2d 1050, 1052 (Ala. 1982) (lender that undertook a duty to help plaintiffs procure a federally subsidized loan was obligated to exercise due care in helping procure the loan). Even if MGC took some voluntary action on Ms. Gardner's behalf, it was still only obligated to exercise the familiar duty of due care, not, as Ms. Gardner urges, the above-and-beyond duty of ensuring compliance with its own internal policies.

But there is no evidence MGC volunteered to take any action for Ms. Gardner's benefit, at least not any action beyond its contractual obligations. At trial, she could not prevail on her undertake-a-duty theory without evidence to suggest MGC undertook some voluntary action "expressly, though not necessarily exclusively, for [her benefit]." *Rudolph v. First S. Fed. Sav. & Loan Ass'n*, 414 So. 2d 64, 71 (Ala. 1982). There is no evidence that MGC adopted any of its internal policies expressly for Ms. Gardner's benefit, or that Ms. Gardner was even aware of MGC's policies at any point before she filed suit. Accordingly, she has not established a genuine issue

12

of material fact suggesting MGC's internal policies created any sort of legally enforceable duty.

Because Ms. Gardner has not established MGC breached any legal duty it owed to her, summary judgment is due on her claims of negligence and wantonness.

**B.     Two of Ms. Gardner's claims survive.**

*1.     Breach of Contract*

Although MGC does not expressly concede the point, it does not deny that it was under a contractual obligation to release Ms. Gardner's insurance funds once it received her completed claim package.  Nor does MGC raise any arguments concerning the time in which it had to act.  Instead, MGC's only argument against the contract claim is that Ms. Gardner failed to comply with a condition precedent because she never returned a completed claim package.  Specifically, the parties appear to agree MGC had no obligation to release Ms. Gardner's insurance funds until she returned a completed claim package.

But Ms. Gardner's sworn deposition testimony (*all* deposition testimony is sworn, and is evidence, even standing alone) indicates she *did* return a completed claim package to MGC.  When asked why she did not return a completed claim package to MGC, Ms Gardner responded, "I sent them back."  (Doc. # 40 ¶ 13.) When asked if the forms were returned to MGC as requested, Ms. Gardner responded

"Yeah. If they sent it to me, that's who I sent it in to." (Doc. # 40 ¶ 13.) When asked if she faxed any documents to MGC, Ms Gardner responded, "If they sent it to me, yeah, I did." (Doc. # 40 ¶ 13.) Based on those statements, a reasonable jury could conclude Ms. Gardner received a blank claim package from MGC, filled it out, and returned it to MGC.[4]

It is true, as MGC says, that Ms. Gardner has not produced "a single letter, facsimile or correspondence of any kind that she supposedly submitted to MGC." (Doc. # 45, at 20.) But MGC goes too far when it declares she has "fail[ed] to produce a shred of evidence that a Claim Package was submitted." (Doc. # 45, at 20.) Ms. Gardner testified under oath that she sent a claim package to MGC. It is not for the court on summary judgment to decide how much credence that testimony deserves; the jury is best suited for that task. That familiar principal deserves emphasis, and the recently-revived words of one of Georgia's great judges do so eloquently: "What shall come to the jury as evidence is for the court. What it is worth when it arrives, is for the jury. They can discern its true value with spare assistance

---

[4] There is also evidence of a confusing exchange that took place during Ms. Gardner's deposition. She was asked to look at two faxed documents that bore both her GMAC and her MGC account numbers. (Doc. # 40 ¶ 14.) Ms. Gardner pointed to one of them and said, "Whose account number is this right there? That's who I sent it back to." (Doc. # 40 ¶ 14.) The parties do not agree which account number Ms. Gardner pointed to, and the deposition transcript is unclear. Because the court cannot determine which account number Ms. Gardner pointed to, it cannot determine whether that portion of deposition testimony counts as evidence for or against her. Accordingly, that evidence does not influence the court's opinion either way.

from the bench." *Feliciano v. City of Miami Beach*, No. 12-11397, 2013 WL 425445, at *1 (11th Cir. 2013) (quoting *Moughon v. State*, 57 Ga. 102, 106 (Ga. 1876) (Bleckley, J.)).

Ms. Gardner's deposition testimony creates a genuine issue of material fact on her contract claim, so summary judgment on that claim is not warranted.

### 2. *Conversion*

To prevail on her conversion claim, Ms. Gardner must submit evidence of a "wrongful taking or a wrongful detention or interference, an illegal assumption of ownership, or an illegal use or misuse of [her] property." *Baxter v. SouthTrust Bank of Dothan*, 584 So. 2d 801, 804–05 (Ala. 1991). In Alabama, "[t]he gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978) (emphasis added).[5] MGC insists Ms. Gardner cannot meet that standard for two reasons: (1) Ms. Gardner did not have an immediate right to the funds, and (2) MGC did not convert the funds to its own use and benefit.

---

[5] MGC does not dispute the proceeds can be subject to a conversion claim. Indeed, as Ms. Gardner points out, "[i]t is well settled that money may be subject to a conversion claim where there is an obligation to keep that money intact or deliver it." *SouthTrust Bank v. Donely*, 925 So. 2d 934, 939 (Ala. 1994) (quotations omitted). And although "an action for conversion of money will not lie unless the money is specific and capable of identification," *id.*, MGC does not suggest Ms. Gardner's funds do not fit that description.

MGC's first argument is premised on the idea that Ms. Gardner did not have an immediate right to the funds because she never returned a completed claim package. But for the reasons discussed above, whether Ms. Gardner sent in a claim package is a genuine issue of material fact. If Ms. Gardner returned a completed claim package as she claims, the parties appear to agree MGC no longer had a right to keep the money and Ms. Gardner had an immediate right to possession of the funds.

MGC's next argument misstates the law of conversion. Although MGC emphasizes that it "did not convert [Ms. Gardner's money] for its own use and benefit," that is not a required element of proof for conversion. Instead, it is sufficient to show MGC exercised dominion over the funds in defiance of Ms. Gardner's right. *See Clardy v. Capital City Asphalt Co.,* 477 So. 2d 350, 352 (Ala. 1985).

Ms. Gardner has presented substantial evidence that she submitted a claim package to MGC. If submitting a claim package vested Ms. Gardner with an immediate right to possession of the funds (which the parties appear to assume is true), a reasonable jury could find MGC committed conversion if it withheld those funds after Ms. Gardner sent in a claim package. Accordingly, summary judgment is not warranted on the conversion claim.

## V.  CONCLUSION

Therefore, it is ORDERED that MGC's motion for summary judgment (Doc. # 34) is GRANTED in part and DENIED in part as follows:

(1) The motion is GRANTED with respect to Ms. Gardner's claims of fraud (Count II), fraudulent suppression (Count VI), breach of fiduciary duty (Count VIII), negligence (Count X), and wantonness (Count XI);

(2) The motion is DENIED with respect to Ms. Gardner's claims of conversion (Count I) and breach of contract (Count IV).

DONE this 4th day of March, 2013.

                                               /s/ W. Keith Watkins
                                CHIEF UNITED STATES DISTRICT JUDGE